UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MARCUS SMITH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 2:24-cv-00330-MPB-MG |
| | ) | |
| J. WADAS, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

### RETURN TO ORDER TO SHOW CAUSE

Petitioner Marcus Smith is currently in the custody of the Federal Bureau of Prisons ("BOP"). He has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition") in which he claims the BOP wrongfully failed to apply time credits he earned under the First Step Act ("FSA") of 2018 ("FTCs" or "FSA time credits"). *See* Dkt. 1. His Petition should be denied because: (1) Smith failed to exhaust available administrative remedies before filing the petition; (2) Smith's risk of recidivism, which has been designated by the BOP as "high risk recidivism", renders him statutorily ineligible to apply FSA time credits to obtain prerelease custody or supervised release at this time; and (3) Smith's history of violence, documented misconduct, and current recidivism risk, do not justify an exception to the routine application of FTCs at this time.

### I.    FACTUAL & PROCEDURAL BACKGROUND

**A.    FSA Credit Time for Evidence-Based Recidivism Reduction (EBRR) Programming**

The FSA was enacted on December 21, 2018. As relevant here, it directs the Attorney General to develop a risk and needs assessment system to determine: (1) each inmate's recidivism risk (classifying each inmate as having a minimum, low, medium, or high risk of recidivism); and

1

(2) the type of Evidence-Based Recidivism Reduction (EBRR) programming appropriate for each inmate.  *See* 18 U.S.C. § 3632(a)–(d).

On July 19, 2019, the Attorney General announced the creation of the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN").  *See* U.S. Dep't of Justice, "The First Step Act of 2018: Risk and Needs Assessment System," at iv, https://www.bop.gov/inmates/fsa/docs/the-firststep-act-of-2018-risk-and-needs-assessment-system.pdf.  PATTERN assigns point values based on several factors, including the inmate's age, criminal history, education level, need for drug programming, and other characteristics, and then returns a numerical score for the inmate. Inmates are periodically reassessed to determine whether their PATTERN score has changed. 18 U.S.C. § 3632(a)(4).  BOP staff use each inmate's PATTERN score to assess the inmate's criminogenic needs and assign them appropriate EBRR programming and/or productive activities. 18 U.S.C. § 3621(h)(1)(A); *see also* Needs Assessment in the Federal Bureau of Prisons, August 2020 Update, at 2, *available at* https://www.bop.gov/inmates/fsa/docs/fsa_needs_assessment.pdf. Not every BOP program or activity qualifies as an EBRR program or activity.  *See* 18 U.S.C. § 3635(3), (5).

Inmates who participate in EBRR-qualifying programming and productive activities can receive incentives including increased telephone and visitation privileges, facility transfers, and even "time credits."  *See* 18 U.S.C. § 3632(d).  Specifically, inmates can "earn 10 days of time credits for every 30 days of successful participation in [EBRR] programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i).  But they may not earn such credits for programs completed before the FSA was enacted. 18 U.S.C. § 3632(d)(4)(B).  And even when an inmate has earned credits, they cannot be applied to obtain prerelease custody or supervised release unless the inmate has: (1) demonstrated a recidivism risk reduction or maintained a minimum or low

recidivism risk; and (2) earned time credits "in an amount that is equal to the remainder of the prisoner's-imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A)–(C).

### B.   Petitioner Smith

Smith is currently serving an 84-month sentence imposed by the United States District Court for the Eastern District of Kentucky, followed by a 5-year term of Supervised Release. Exh. 1, *Declaration of Case Management Coordinator F. Roshto* at ¶ 5; Exh. 1, Attachment 1, *SENTRY Public Information Inmate Data*. Smith's full-term release date is September 21, 2027; with Good Conduct Time, his projected release date is October 19, 2026. *Id*.

Smith is eligible to earn FTCs under 18 U.S.C. § 3632(d). Exh. 1 at ¶¶ 6-9; Exh. 1, Attachment 2, *FSA – Risk Assessment*. However, Smith's PATTERN score is currently high, which is consistent with his prior PATTERN assessments. Exh. 1, Attachment 3, *FSA Time Credit Assessment for Marcus Smith, Reg. No. 03871-061*. Smith's PATTERN score was high on August 4, 2021, January 31, 2022, July 30, 2022, January 26, 2023, July 25, 2023, January 21, 2024, and July 19, 2024. *Id*.

On June 26, 2024, Smith filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2241. Dkt. 1. In his Petition, Smith seeks an order directing the BOP to apply his FTCs "towards release." *Id*.

On November 20, 2024, the Court issued an Order to Show Cause why that relief should not be granted. Dkt. 8.

### II.   ARGUMENT

#### A. The Petition Must be Denied for Failure to Exhaust Administrative Remedies.

Smith never sought administrative relief on the issue of FTC eligibility, nor has he appealed the Warden's denial of his exception request. A summary of administrative remedy

requests submitted under Smith's Federal Register Number, 66052-509, in the BOP's SENTRY database reveals that Smith did not submit any requests for administrative remedies concerning the denial of his request to be granted an exception to his High PATTERN score for the purposes of applying FTCs toward RRC placement. Exh. 2, *Declaration of Renee Turner* at ¶¶ 8-9; Attachment 2, *SENTRY Administrative Remedy Generalized Retrieval*. Smith claims that the Warden's denial of his request for an exception to the statutory requirement that inmates must have a low or minimum recidivism rating in order to apply their FTCs to RRC placement constitutes administrative exhaustion. This is not true.

"Although there is no express exhaustion requirement in §2241, courts generally require that an inmate exhaust the bureau's administrative remedies." *Szafian v. Keyes*, No. 22-CV-120-JDP, 2022 WL 2709084, at *2 (W.D. Wis. June 3, 2022) (citing *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004) for the proposition that there exists a common-law exhaustion rule for §2241 actions). "But where Congress has not clearly required exhaustion, sound judicial discretion governs" *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S. Ct. 1081, 1086, 117 L. Ed. 2d 291 (1992). Courts begin with "the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *Id*. at 144-145. But that rule is not absolute. The Seventh Circuit has held that exhaustion may be excused when (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (*citing Iddir v. INS*, 301 F.3d 492, 498 (7th Cir.2002)). The Petition does not argue

that any of the conditions that may justify excusing the failure to exhaust administrative remedies are present in this case.

Contrary to Smith's claims, the exception request is not an administrative grievance and does not excuse his failure to exhaust administrative remedies on this issue. *Nolan v. Edge*, No. 2:23-CV-00070-BSM-ERE, 2023 WL 6450489 at *2 (E.D. Ark. June 8, 2023), R&R adopted, No. 2:23-CV-00070-BSM, 2023 WL 6447308 (E.D. Ark. Oct. 3, 2023)("Mr. Nolan argues that he was not required to exhaust his administrative remedies because he sought relief directly from the warden, pursuant to 18 U.S.C. § 3624(g)(1)(D)(i)(II). He contends the statute 'defines the remedy process and [he] has complied with it.' The statute may define the remedy process, but it does not address how the inmate can challenge an unfavorable decision. Nothing in the statute overrides the BOP's administrative process for exhaustion, and Mr. Nolan cites no law to support his position.") (citations omitted); *Orihuela v. Engleman*, No. 22-cv-3165-SSS (DFM), 2022 WL 18106676 at *6 (C.D. Cal. Nov. 3, 2022) (requiring exhaustion when a warden rejected relief requested under 18 U.S.C. § 3624(g)(1)(D)(i)(II)).

### B. Smith's High PATTERN Score Renders Him Ineligible to Apply FTCs

Smith's petition should be denied because his high PATTERN score renders him statutorily ineligible for application of FTCs toward early prerelease custody or supervised release. *See* 28 C.F.R. § 523.44 and 18 U.S.C. § 3624(g)(1). As Smith's petition points out, he is eligible to earn FTCs. 18 U.S.C. § 3632(d). However, Smith's petition fails to address the FSA's eligibility requirements for application of those credits; only inmates who have "been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner" are eligible to apply FTCs to obtain early prerelease custody. 28 C.F.R. § 523.44 (b) and 18 U.S.C. § 3624(g)(1)(D)(i). Similarly, Smith is also ineligible to apply his

5

FTCs to early supervised release because only inmates that have "been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner" are eligible to apply FTCs to supervised release custody. 18 U.S.C. § 3624(g)(1)(D)(ii). Smith's PATTERN score is currently high and has consistently been high throughout his incarceration. Exh. 1, Attachment 3. As a result, he is not eligible to apply EBRR credits to obtain prerelease custody or supervised release pursuant to 18 U.S.C. § 3624(g)(1)(B), and his Petition should therefore be denied. *See, e.g., Hernandez v. Warden FPC-Lewisburg*, No. CV 1:21-0599, 2022 WL 452408, at *3 (M.D. Pa. Feb. 14, 2022) (holding that an inmate was ineligible to apply earned time credits because his PATTERN assessments scored him at a high risk of recidivism); *Knight v. Bell*, No. CV JKB-20-3108, 2021 WL 1753791, at *4 (D. Md. May 4, 2021) (holding that the inmate was ineligible "to use any time credit to reduce his sentence because his current PATTERN score shows a high-risk recidivism level"); *Shipman v. Cox*, No. 4:22-CV-00001, 2022 WL 1239063, at *3 (N.D. Ohio Apr. 27, 2022) (same).

Under the plain statutory language of 18 U.S.C. § 3624(g), FTCs can only be applied to a prisoner's sentence if the prisoner meets certain criteria, including that he or she has "… maintained a minimum or low recidivism risk, during the term of imprisonment." The BOP assessed Smith to be at high risk of recidivism on August 42, 2021, January 31, 2022, July 30, 2022, January 26, 2023, July 25, 2023, January 21, 2024, and July 19, 2024. Exh. 1, Attachment 3. There is no ambiguity in the language of § 3624(g) as it relates to the BOP's assessment of Smith's eligibility for application of FTCs toward early prerelease custody or supervised release; the provision prevents application of FTCs for offenders who have not maintained minimum or low risk recidivism rating during their incarceration.

### C. Smith is Not Eligible for an Exception to the Statutory Requirements for Application of FTCs

Pursuant to Program Statement 5410.01, FSA of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632 (d)(4), inmates can request an exception to their recidivism level so that they can apply FTCs (towards RRC transfer only). *See also* 28 C.F.R. § 523.44(c)(2). However, these exceptions are only granted if the Warden has made the following determinations regarding the inmate: (1) they would not be a danger to society if transferred to prerelease custody or supervised release; (2) they have made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and (3) they are unlikely to recidivate. Id. at 14; 18 U.S.C. § 3624 (g)(1)(D)(i)(II).

On May 28, 2024, Smith requested an exception, which Warden Wadas denied on the same day. Exh. 1 at ¶ 10; Exh. 2, at ¶ 7. While the Warden's response incorrectly stated that Smith had a current crime of violence, it correctly pointed out that his violent prior convictions and parole violations did not suggest he was suitable for this exception. Exh. 1 at ¶ 11. Additionally, Petitioner's subsequent misconduct for drug possession and history of disciplinary infractions during his last RRC placement further justify the denial of this exception. *Id*.

### III. CONCLUSION

For the foregoing reasons, the Court should deny Smith's Petition for Writ of Habeas Corpus.

Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

By: */s/ Joi Kamper*
Joi Kamper
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2024, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

I further certify that on December 31, 2024, a copy of the foregoing was mailed, by first-class U.S. Mail, postage prepaid and properly addressed to the following:

Marcus Smith
03871061
TERRE HAUTE - FCI TERRE HAUTE
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

                                                                          By:    */s/ Joi Kamper*
                                                                                      Joi Kamper
                                                                                      Assistant United States Attorney

Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204
Telephone: (317) 226-6333